*Court of Common Pleas, Dauphin County, July 3d, 1858.*

### HOCKER *v.* BASKINS, EXECUTOR OF WOODS.

When one of two guardians has been discharged by the Orphans' Court, the other afterwards becomes insolvent, and the person who had gone bail for both of them pays the money due by the latter to his ward, the surety cannot demand the amount paid from the discharged guardian.

BY THE COURT.—From the facts submitted, it appears that Henry Woods and John Strasbaugh were appointed guardians of Timothy Kirby's minor children on the 21st of November, 1845, and gave bond in $7000 for the faithful performance of their duty, with Peter Hocker as security. On the 27th day of April, 1846, Henry Woods presented his petition to the Orphans' Court setting forth that no money had come into his hands belonging to their wards, and asking to be discharged from his appointment as guardian. On the same day, Peter Hocker was appointed in his stead, and directed to give security in $7000, and Wood was discharged, and " ordered to deliver over to the guardian then appointed all goods, moneys, effects, and papers belonging to his said wards, if any he has." On the 2d of May, 1846, Peter Hocker declined accepting the appointment. In August, 1846, John Seales was appointed for one of the minors. Henry Woods died on February 7th, 1847. In April, 1855, John Strasburgh died insolvent, and Peter Hocker took out letters of administration on his estate, settled an account as guardian of said minors, and a balance was found due them from John Strasbaugh of $1838.07, which sum was voluntarily paid by Hocker as bail of Strasbaugh. Three questions present themselves for our consideration. First, was the payment by Hocker voluntary, or could he have been obliged to pay, if sued on the bond? Second, did the discharge of Woods as guardian, under the circumstances, release him from all liability, or did the same stand as security for the faithful performance of Strasbaugh? And third, if the bond remains in full force against Wood's estate, should he be treated as principal and obliged to indemnify Hocker, or as a co-surety and bound to contribute? The first point is one of some nicety, which we are relieved from deciding, as, in our opinion, the second is decisive of the case. It may be observed in regard to the first, that if it were a private transaction, there could be no doubt as to the effect of Henry Woods' discharge. The release of one obligor discharges all, or any interference with the parties designated to perform the duties, by which one is relieved and additional burdens thrown upon the other, discharges the surety. Peter Hocker might have been perfectly willing to stand as bail for Woods and Strasbaugh, knowing that the former was responsible, honest, and careful, yet entirely unwilling to be held for Strasbaugh alone.

[Hocker *v.* Baskins, Executor of Woods.]

How far the action of a court, in the exercise of its legal discretion, may have that effect, is a point by no means clear, and so far as we have been able to discover, the decisions are contradictory. It is very certain that a surety cannot be rendered responsible beyond the letter of his obligation by the action of any court.

Second. The decree of the court discharging Henry Woods as guardian, and the appointment of Hocker, ordering new bail to be given in the sum of $7000, in our opinion not only releases him from performing any further duties as guardian, but absolves him from all liability for the acts of his co-guardian. It was not the intention to discharge him in part, but in whole. The court did not design to "keep the promise to the ear, and break it to the hope" of this old man, but to release him entirely, and have new bail entered in a like sum. Of course, the bail bond would stand as security for the faithful appropriation of all money which had *then* come into the hands of either of the guardians; but it was conceded on the argument, and made part of case stated, that they had not at that time received anything. It therefore ceased to be obligatory on Henry Woods as to any money which Strasbaugh might receive afterwards.

If Peter Hocker had not the means of relief against the obligation of his bond, we would feel ourselves constrained to say that Woods continued bound also. But to us it appears clear that he could have demanded *as a matter of right*, that he should be discharged from all future liability, and had he presented his petition to the Orphans' Court, setting forth that the discharge of Woods increased his responsibility, and praying that he should be absolved from any future obligation, on account of the acts of Strasbaugh, the court would have been in duty bound so to decree, and require new bail to be given, or a new appointment made. Having the power thus to relieve himself, and failing to ask it, if he continued liable afterwards, it was from his own negligence, or because he volunteered his responsibility.

Henry Woods seeing a new appointment made, and new bail ordered, had no reason to suppose that he would continue liable on his bond for the acts of others; from aught that appears, he never knew but what the new security was given. This is unlike the cases referred to in our own reports, where one administrator was held answerable on his bond for the delinquency of his co-administrator. It would have been like those cases, if Henry Woods had not been discharged, but merely ceased to act, and permitted his co-guardian to manage the estate. The case relied on in 2 Conn. Rep. 536, is entirely unlike the present, and those referred to in the 13th vol. U. S. Dig., p. 378, pl. 68 and 64, are not sustained by the cases when examined in 18 Alabama, 455, and 19 Idem, 277. When it shall be decided by our courts, that

[May v. Espenshade et al.]

when letters of administration are granted to two persons, and they regularly settle up their accounts in the Orphans' Court, and pay over all the moneys in their hands, and one is entirely and unconditionally discharged, as administrator, that he is responsible for money afterwards received by the other administrator, I shall consider Henry Woods answerable for this debt. No such decision has yet been made, and I trust never will be. The decision on this point relieves the estate of Henry Woods from any portion of the loss, and therefore the question of contribution does not arise. Judgment is rendered in favor of the defendant on the case stated.

AFFIRMED BY THE SUPREME COURT. June 30th, 1859. Not reported.